IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EUGENE WEARING,

                      Petitioner,                    OPINION AND ORDER

    v.

                                                               18-cv-961-wmc
                                                              14-cr-122-wmc

UNITED STATES OF AMERICA,

                      Respondent.

---

Proceeding *pro se* under 28 U.S.C. § 2255, Eugene Wearing petitions to vacate his sentence on the grounds that his trial attorneys were ineffective in violation of his Sixth Amendment rights. (Dkt. #1.) Wearing has also filed two motions for appointment of counsel and asks that the court hold a hearing on his motion to vacate (Dkt. ##2, 7.)[1] Having received detailed submissions from Wearing and the government, as well as recalling the details of Wearing's stipulated bench trial and sentencing, the court finds that neither recruitment of counsel nor a hearing is unnecessary. Moreover, the court finds Wearing's representation was more than adequate, and he has fallen far short of meeting the demanding standard necessary to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1994). Therefore, his motions will be denied without further hearing, and this action will be dismissed.

---

[1] Most recently, Wearing filed a motion to amend his petition (dkt. #19), which the court denies as unnecessary because Wearing simply restates the grounds for relief he raised in his motion.

1

BACKGROUND[2]

**A. Wearing's psychological evaluation and stipulated bench trial**

On March 1, 2014, a grand jury charged Eugene Wearing with one count of sex trafficking of a minor in violation of 18 U.S.C. § 1591. After a trial date was set, Wearing's appointed attorneys, Assistant Federal Defenders Joseph Bugni and Kelly Welsh, asked for additional time to prepare pretrial motions, indicating that they were gathering information related to Wearing's competency. About a month later, his counsel filed a motion to determine Wearing's competency to stand trial, as well as his sanity at the time of the alleged offense, which the court granted. On October 22, 2015, Dr. Christine Scronce, a forensic psychologist designated by the United States Attorney General's office, submitted her report, in which she opined that Wearing was competent to stand trial and did not suffer from a severe mental disease or defect that rendered him unable to appreciate the nature and quality or wrongfulness of his subject actions. (CR (dkt. #19).) Two weeks later, Wearing's counsel notified the court that he did not intend to contest the psychologist's finding that Wearing was competent, and a new trial date was set.

Next, the parties jointly moved the court for a bench trial on stipulated facts. After directing the parties to submit the stipulated evidence to the court and holding a hearing to determine whether Wearing was knowingly and voluntarily (1) waiving his right to a jury trial and (2) entering into the factual stipulation, rather than putting the government

---

[2] The court refers to docket entries from the underlying criminal proceeding in Case No. 14-cr-22 as "CR."

2

to its proof at trial, the court set the matter over for further briefing. On that evidence, the government then moved for a guilty verdict, and defendant filed a motion for a directed verdict of not guilty.

On May 5, 2016, the court denied defendant's motion, finding Wearing guilty of the charged offense. In that order, the court recited the material facts consistent with the parties' submissions, including as relevant to the present motion, that overwhelming evidence showed in February and March of 2014, defendant Wearing had multiple times attempted to engage a minor in a commercial sex act, using both his email account and a Craigslist posting, although no such commercial sex act ultimately occurred. (CR (dkt. #31) 2-3.) The court then addressed defendants' arguments that he was not guilty of violating § 1591(a) because: (1) the minor victim did not actually engage in a commercial sex act as required by the statute; and (2) none of the stipulated events occurred in or affected interstate or foreign commerce as required by the statute.

As to the first argument, the court found persuasive the five circuits that had held § 1591 did *not* require a commercial sex act for a violation to occur under § 1591. The court also rejected defendant's own, unique interpretation of the language of § 1591, finding that the language was not vague, and although it was forward-looking without requiring a completed commercial sex act before a violation has occurred, the court further rejected defendant's argument that the separate, "attempt" statute, 18 U.S.C. § 1594, would lack meaning if a commercial sex act were *not* required under § 1591. Finally, as did all other federal circuit courts to date, this court concluded that the history and purpose of the Trafficking Victims Protection Act of 2000 ("TVPA") did not suggest that a

3

commercial sex act *must* occur for a defendant to violate § 1591.

As to the second argument, the court rejected defendant's assertion that the evidence precluded a finding that interstate commerce had been affected by his conduct. Specifically, while acknowledging that all the events related to the charge occurred within Wisconsin, the court deemed Wearing's use of Craigslist to post his solicitation of minors for sex all by itself was sufficient to fulfill the interstate commerce element, since the Court of Appeals for the Seventh Circuit had by then observed approvingly how expansively other circuits had interpreted the interstate commerce element under the TVPA.

### B. Sentencing

Following the court's guilty verdict and before sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR"), calculating the advisory guidelines range to be 324 to 405 months. Wearing did *not* object to the PSR, although his counsel submitted a lengthy sentencing memorandum seeking leniency. Specifically, defendant's counsel stressed: (1) the unique facts of this case, including that a commercial sex act did not occur; (2) there was just one victim; and (3) Wearing's mental health problems, his history of drug addiction and Parkinson's disease. (CR (dkt. #38).) As to his mental health problems in particular, counsel detailed Wearing's history of hospitalizations and treatment for his multiple mental health problems, including bipolar disorder, personality disorder, and drug abuse issues, emphasizing that much of his criminal conduct could be explained by his failure to be diligent about needed treatment and medications. (*Id.* at 6-8.)

At sentencing, the court noted that Wearing's misconduct fell "outside the heartland of the guidelines range," and thus, imposed a below-guidelines sentence of 15 years' incarceration, to be followed by 10 years of supervised release. The court further noted that if Wearing were later sentenced in state court, the sentences should run consecutively for unrelated conduct, leaving it to the state court to adjust its sentence accordingly. (Sent. Tr. (dkt. #45) 27.)

## C. Appeal

On direct appeal through counsel, the Seventh Circuit affirmed both defendant's conviction and sentencing. *United States v. Wearing*, 865 F.3d 553 (7th Cir. 2017). More specifically, that court agreed that (1) the language of § 1591 was intentionally forward-looking, and (2) the statutory language focuses on the defendant's *intended plan* for the victim at the time of recruitment, not on the victim's ultimate actions. *Id.* at 556. Unlike knowledge that the victim was a minor, the court also held that the statute did not require the commercial sex act be *completed* to find a violation of the statute. *Id.* at 557. Finally, the court agreed Wearing's Craigslist posting satisfied the interstate commerce element of § 1591, since that posting was unquestionably part of the scheme to prostitute the minor victim.

## OPINION

Generally speaking, a § 2255 motion cannot raise: (1) issues raised and decided on direct appeal, *unless* there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional

5

issues that were not raised on direct appeal. *Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992) (overruled on other grounds by *Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994)). However, a claim of ineffective assistance of counsel *may* be brought in a § 2255 motion regardless of whether that claim was raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Here, Wearing claims that his trial attorneys performed ineffectively in seven, different respects. To succeed, he must meet the demanding standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must demonstrate *both* a constitutionally deficient performance by counsel *and* actual prejudice as a result of that deficiency. *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000). If a petitioner fails to prove either prong, the court need not consider the other. *Strickland*, 466 U.S. at 697. As to the first prong, performance is measured under an objective standard: whether counsel's conduct "fell outside the wide range of competent representation." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012). "This means identifying acts or omissions of counsel that could *not* be the result of professional judgment. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Sussman v. Jenkins*, 636 F.3d 329, 349 (7th Cir. 2011) (emphasis added; internal quotation marks and citations omitted). Thus, this court's "review of the attorney's performance is 'highly deferential' and reflects 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the

6

circumstances, the challenged action might be considered sound trial strategy.'" *Davis v. Lambert*, 388 F.3d 1052, 1059 (7th Cir. 2004) (quoting *Strickland*, 466 U.S. at 689). To prove the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. While Wearing suggests seven reasons why his trial attorneys were ineffective, none satisfy either *Strickland* element.

*First*, Wearing claims his attorneys failed to investigate and prepare an insanity defense. Any failure to investigate claim faces a particularly steep battle. Specifically, as the Seventh Circuit has explained, a petitioner's ineffective assistance claims grounded in a failure to investigate requires "a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (citations omitted). Regardless, Wearing has not, and cannot, show that his attorneys failed to investigate the viability of an insanity defense since they affirmatively moved for *and* obtained an order for an expert evaluation of defendant's sanity upon commission of the offense.

While Wearing nevertheless maintains that further investigation would have shown that his manic state during February and March of 2014 prevented him from appreciating the wrongfulness of his conduct, he fails to offer any detail as what else his counsel should have discovered despite Dr. Scronce's contrary findings, much less offer a "comprehensive showing." Instead, Wearing simply claims that: his *state court* examination was strange and ambiguous; his attorneys did not reach out to his family, friends or mental healthcare providers; he told Attorney Bugni that the conditions in which he was evaluated were

7

questionable; and Attorneys Bugni and Welsh learned that Wearing's girlfriend believed that he was not taking his medications during the relevant time, and he and she were looking for marijuana to help temper his mania.  *Claims* alone are simply inadequate to meet plaintiff's heavy burden of proof, particularly in the face of powerful, contrary evidence of his sanity at the time.

Moreover, Wearing's claims all ignore his attorneys' own, deep understanding of the severity and far-reaching impact of his mental health challenges, as demonstrated by their motion to determine Wearing's competency to stand trial *and* his sanity at the time of the offense (C.R. (dkt. #15)), and again at sentencing.  Indeed, in asking for a comprehensive evaluation, his counsel argued in particular that:  at the time of Wearing's original arrest, his state court defense attorney had arranged for a psychological evaluation; Wearing reported a lengthy history of mental health and substance abuse; his medical records show that during the time frame charged, Wearing had been hospitalized in a psychiatric services department; and he had stopped taking his medications within that timeframe, which exacerbated his mental health problems.  (*Id.* at 2.)  Before filing defendant's federal motion for a psychiatric evaluation, therefore, his counsel had obviously both reviewed his medical records and found sound arguments to have his sanity determined again.

Unfortunately for Wearing, however, Dr. Christine Scronce concluded he did *not* suffer from a severe mental disease or defect that rendered him unable to appreciate the wrongfulness of his conduct.  In explaining her conclusion, Dr. Scronce reasoned in part that:

> The evidence does suggest [that Wearing] may have suffered from some hypomanic symptoms during a portion of the time period of the alleged offense; whether these symptoms were due to drug use or an underlying mood disturbance, or some combination, is not clear.  It is clear, though, that the relevant conduct continued after his symptoms were observed to be in remission.  Even if one were to accept the defendant's version that he was engaging in some sort of ruse to trick the victim, the evidence indicates the alleged offense behavior occurred over an extended period of time and required extensive planning, subterfuge, and grooming and manipulation of the victim.  This sort of calculated behavior is not consistent with the impulsive behavior of an individual in a severe manic state.  Rather, his alleged offense behavior was organized and goal-oriented and indicated he was well aware of the nature and quality of his actions.  Furthermore, during the lengthy video recorded interviews after his arrest, Mr. Wearing did not present with any symptoms of mood disorder.  He was composed and appeared quite cognizant of his circumstances.  He repeatedly denied wrongdoing, blamed the alleged victim and her mother, and explained away any potential evidence against him.  His repeated obfuscation, denial, and minimization demonstrated he was aware of the wrongfulness and potential consequences of the alleged offense.

(CR (dkt. #19) 20.)

While Wearing would challenge the quality of Dr. Scronce's assessment in general terms -- suggesting that her evaluation contained errors and omissions and demonstrated bias in the government's favor -- his attempt to fault his attorney for failing to retain yet another expert, perhaps one who "specializes in bipolar disorder" to develop the insanity defense is a complete non-starter.  In particular, Wearing has submitted *no* evidence showing that it should have been obvious to his attorneys that Dr. Scronce's evaluation contained such clear errors that they should have investigated further and pressed on for the insanity defense.  Nor can the court discern how such an argument could have been

persuasive, given Dr. Scronce's observations that Wearing's illicit activities: (1) continued *after* his manic symptoms had subsided; and (2) demonstrated thoughtfulness and planning inconsistent with a person in a severe manic state.

Finally, Wearing cites *Wilson v. Gaetz*, 608 F.3d 347 (7th Cir. 2010), for the proposition that his attorney performed deficiently in failing to secure a *second* expert to develop an insanity defense, but that was not the holding of *Wilson*. Rather, Wilson had been evaluated by a court-appointed psychiatrist for the *sole* purpose of evaluating his fitness to stand trial. *Id.* at 349. While that psychiatrist deemed him unfit to stand trial, months later Wilson was deemed fit to do so. Before trial, Wilson's counsel then asked the court-appointed psychiatrist to testify whether Wilson had been *insane* at the time of the charged offense. For some reason, the psychiatrist agreed to testify "but added that an effective insanity defense would require testimony by a second expert as well, someone who would perform a sanity evaluation of Wilson." *Id.* After Wilson was convicted and appealed, the Seventh Circuit concluded that his trial counsel performed deficiently in failing to have Wilson evaluated as advised by the court-appointed expert. *Id.* at 351-52.

In contrast, as noted earlier, Dr. Scronce evaluated Wearing for *both* his fitness to stand trial *and* his mental state at the time of the charges. Therefore, the *Wilson* decision in no way supports a finding that Wearing's counsel performed deficiently in failing to pursue a possible insanity defense. In the end, therefore, petitioner has offered nothing to suggest that his counsel performed deficiently in investigating and ultimately declining to pursue an insanity defense, much less made a comprehensive showing that such a defense could have succeeded a trial.

*Second*, Wearing claims that his counsel failed to investigate his intentions toward the minor victim, KV. In particular, Wearing claims that while wanting to pursue a sexual relationship with her, *he* was too shy to follow through. Even less persuasive, Wearing would fault his counsel for not investigating further how *KV* had made sexual advances towards him. As an initial matter, *all* of the information was known to his attorneys; however, they understandably made the strategic choice not to pursue that theory of defense. Moreover, Wearing fails to explain how further investigation into his intentions for KV, or vice versa, could have rendered a stipulated trial imprudent, such that proceeding to a jury trial would have improved the possibility of a different outcome. Wearing also repeats his frustration with his attorneys for not focusing on his mental health during the relevant time. As discussed above, however, his counsel *did* focus on the impact of his mental health, they simply made the strategic choice to do so at sentencing, having determined that it would not have been fruitful to emphasize his mental health at any other stage. This, too, was an eminently reasonable choice. Accordingly, this argument fails as well.

*Third*, Wearing claims that Attorney Bugni had a conflict of interest because he was more interested in pursuing a statutory interpretation argument of 28 U.S.C. § 1591, as opposed to considering Wearing's best interests. Even setting aside that this would be totally out of character for Assistant Federal Defender Bugni, whose zealous, sincere advocacy for all of his clients has consistently been above reproach in this court, to prove an ineffective assistance claim based on an actual conflict of interest, a petitioner must show that the conflict had an adverse effect on his lawyer's performance. Specifically,

11

Wearing must show "that there is a reasonable likelihood his counsel's performance would have been different had there been no conflict of interest." *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). This, Wearing cannot do. To begin, Wearing has not shown that Attorney Bugni's interest in pursuing a statutory interpretation argument actually conflicted in any way with Wearing's best interests. On the contrary, the record of this case strongly suggests that Bugni pursued the statutory argument after determining that the facts of this case were not subject to reasonable dispute, nor at all favorable to the defendant. Plus, the statutory interpretation question had not yet been answered in this Circuit.[3] Regardless, Attorney Bugni has often demonstrated the ability to walk and chew gum at the same time before this court. In fact, examples of his ability to pursue nuanced legal arguments while presenting a robust defense on the facts at trial are too numerous to review in this opinion.

Wearing also suggests, without proof that the facts were actually subject to dispute, and worse, that Bugni *compelled* him to perjure himself before this court (dkt. #16, at 20-21) despite his mental state preventing him from knowingly and voluntarily agreeing to

---

[3] Ironically enough, Wearing also claims in his petition that his attorneys were ineffective in failing to inform him that five other federal circuit courts had decided that a commercial sex act is not required to violate § 1591. (Dkt. #1-3 at 4-8.) Given Attorney Bugni's claimed tunnel vision on this legal issue and his disclosure *on the record* of his client's awareness of the legal landscape (*see* dkt. #24 ¶ 3 ("The defendant acknowledges that his position is contrary to the weight of the current case law."), this claim is *very* difficult to credit, but even if the court did so, Wearing does not make a comprehensive showing that the outcome would have been any different had he taken his chances at trial, as explained elsewhere in this opinion. For example, Wearing has not shown that he was willing to give up the acceptance of responsibility three-level downward departure, nor reckoned with the likelihood that the court would be inclined to impose a heightened sentence under § 3553(a), due to his insistence on putting the victim through the trauma of a trial.

the stipulated facts. Not only does Wearing fail to detail how the stipulated facts are false, his limited attempts to challenge the accuracy of those facts fall flat.

As already discussed, Wearing's comments about his mental state during the criminal proceedings are also belied by Dr. Scronce's findings that he was well aware of the legal and factual issues related to the charges he was facing. (Dkt. #19, at 13-14.) Moreover, the court specifically engaged in a colloquy with Wearing on this subject before accepting his stipulation of facts, during which Wearing demonstrated that: he could communicate cohesively; he understood the nature of the charge and his potential sentence; and the government would be able to prove all of the stipulated facts. The court's finding on this issue was explicit, only accepting the stipulated facts "[a]fter an oral colloquy with the defendant and his counsel to assure that Wearing was acting freely and voluntarily with an understanding of the consequences of foregoing his right to dispute the government's proof at trial." (Op. & Order (dkt. #31) 2 n.1.)

Finally, Wearing does little more than suggest his new version of the facts is different than the one he asked the court to accept at the bench trial. (Dkt. #1-2, at 7.) Regardless, he cannot challenge the truth of those stipulated facts in a collateral attack on his conviction after swearing to their truth under penalty of perjury. *Cf. United States v. Cieslowski*, 410 F.3d 353, 358 (7th Cir. 2005) ("Because of the great weight we place on these in-court statements, we credit them over his later claims that he would not have pleaded guilty.") (citations and internal punctuation omitted). Although Wearing now insists that a jury may have received *more* information about the impact of his mental state or drug use (or his wholly irrelevant assertion of KV's general interest as a minor in

13

prostitution), he has not explained how this additional evidence would have been so impactful that there was a reasonable probability he would have taken his chances at trial, much less that it somehow rendered ineffective Attorney Bugni's counsel *not* to make this incredibly risky, if not foolhardy, choice. Thus, Wearing's conflict of interest argument is wholly without merit.

*Fourth*, Wearing claims that his attorneys withheld the fact that the victim did not want to testify at trial, claiming that he was prejudiced by his attorneys' failure to disclose this fact. However, it is hardly a revelation that a minor victim would be reluctant to testify. What Wearing has *not* shown is that the victim would have *refused* to testify at trial, just that she did not want to do so. Regardless, the government did not need to rely on the victim's testimony to meet its burden at trial. In addition to her testimony, the government was prepared to submit the following evidence gathered from Wearing's phone: (1) an advertisement soliciting sexual encounters with the victim that included her pictures; and (2) correspondence with multiple customers who responded to the advertisement. (C.R. (dkt. #35) ¶ 48.) Additionally, after Wearing was arrested, he *admitted* that he was aware of the Craigslist ad offering the victim's sexual services, as well as *conceded* that he had corresponded with a potential customer. (*Id.* ¶ 64.) In light of this other evidence, Wearing has not shown even a reasonable probability that he would not have agreed to the stipulated facts and taken his chances at trial, even if the court assumes he was unaware of the victim's reticence to testify. Accordingly, there is no basis on this record to conclude that the performance of Wearing's attorneys was deficient if

14

they fail to have a specific discussion about the victim's reluctance to testify against Wearing, much less that he was prejudiced by that failure.

*Fifth*, Wearing claims without elaboration that in challenging § 1591, his attorneys actually misinterpreted it. While his counsel advocated for a statutory interpretation that neither this court nor the Seventh Circuit accepted, the argument had not been foreclosed by circuit precedent. Further, counsel carefully developed, thoroughly researched and clearly articulated the argument both before this court and the Seventh Circuit. Regardless, there was an objective, strategic reason for pursuing this argument: the evidence against the defendant was overwhelming; the government was obviously confident in its ability to meet its burden; and the illegality of an attempted commercial sex act under § 1591 had not yet been decided by the Seventh Circuit. While Wearing's counsel faced an uphill battle in pursuing the argument, it is unclear what else was available to the defense and this court's role is not to "second guess the reasonable tactical decision" to pursue an arguable interpretation of § 1591 favorable to Wearing. *See Tucker v. United States*, 889 F.3d 881, 885 (7th Cir. 2018) (trial counsel's decision to stipulate that a death resulted from drug distribution "was surely a reasonable tactical decision" to strike a deal that would prevent the government from submitting evidence of the death at trial). Finally, "a failure to anticipate a change or advancement in the law does not qualify as ineffective assistance." *Id.* (citing *Lilly v. Gilmore*, 988 F.2d 783, 786 (7th Cir. 1993)).

*Sixth*, Wearing faults his counsel for failing to file a motion to dismiss. This argument fails on its face because Wearing does not even identify the basis for such a motion, much less reasons to believe it would have had any chance of succeeding. Setting

15

aside Wearing's vague argument, a motion to dismiss had no place in this case: a motion to dismiss is not the place to challenge the sufficiency of the government's evidence; instead, the court must consider "whether it's possible to view the conduct alleged" as violating the applicable statute. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Here, the indictment did not charge facts suggesting that a commercial sex act had not occurred, so Wearing's counsel would not have had a legitimate basis to pursue dismissal. Therefore, Wearing has not shown that his attorneys performed deficiently on this basis either.

*Seventh*, and finally, Wearing claims that during the sentencing phase before this court, his attorney failed to argue that any federal sentence should run concurrently with any subsequent state sentence under the Supreme Court's holding in *Setser v. United States*, 566 U.S. 231, 239 (2012). With respect to sentencing, the petitioner must show that an attorney's error resulted in a longer sentence. *E.g.*, *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) (failure to object to error in the court's guidelines calculation constituted deficient performance). To satisfy this prejudice element, the petitioner must also show that there is a reasonable probability that he would have received a lighter sentence *but for* counsel's alleged errors. *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010). At sentencing, Wearing's counsel may not have specifically cited *Setser*, but this court was obviously aware of its discretion to order a federal sentence to run concurrent with or consecutive to an anticipated state sentence. Indeed, the court itself noted its discretion under *Setser*, and specifically stated that Wearing's sentence should be consecutive to any subsequent state sentence because "those state courts are in the best

16

position to determine the sentencing issues before them and adjust to my sentence accordingly." (Sent. Tr. (dkt. #45) 27.) Thus, Wearing cannot show that if his counsel had raised *Setser* himself, he would have received a concurrent or shorter incarceration period overall. As with his other six arguments, therefore, this one lacks merit.

### III. Certificate of Appealability

Under Rule 11 of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000)). For all the reasons just discussed, Wearing has not made such a showing, and a certificate of appealability will not issue.

ORDER

IT IS ORDERED that:

(1) Eugene Wearing's petition to vacate under 28 U.S.C. § 2255 is DENIED.

(2) Wearing's motions for appointment of counsel (dkt. ##2, 7) are DENIED as moot.

(3) Wearing's motion to amend (dkt. #19) is DENIED as moot.

(4) No certificate of appealability shall issue.

(5) The clerk of court is directed to enter judgment and close this case.

Entered this 24th day of June, 2022.

                                            BY THE COURT:

                                            /s/

                                            _____

                                            WILLIAM M. CONLEY
                                            District Judge